# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| AEROVATION, INC.,<br><br>Plaintiff / Counter-Defendant /<br>Third-Party Plaintiff,<br><br>v.<br><br>AIRTEC, INC.,<br><br>Defendant / Counter-Plaintiff,<br><br>STEVENS AVIATION, INC. and<br>AERY AVIATION, LLC,<br><br>Third-Party Defendants. | Civil Action No. TDC-18-2959 |

## MEMORANDUM OPINION

Plaintiff and Third-Party Plaintiff Aerovation, Inc. ("Aerovation") has filed a civil action against Defendant Airtec, Inc. ("Airtec") alleging breach of contract. After Airtec filed counterclaims, Aerovation impleaded Aery Aviation, LLC ("Aery") and Stevens Aviation, Inc. ("Stevens"), alleging Maryland indemnification and contribution claims. Presently pending before the Court are separate Motions to Dismiss filed by Aery and Stevens. Upon reviewing the submitted materials, the Court determines that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Aery's Motion is DENIED, Stevens's Motion is GRANTED, and Aerovation's request for leave to amend the Third-Party Complaint as to Stevens is DENIED.

## BACKGROUND

In early 2018, Airtec and Aerovation entered into a contract for Aerovation to provide materials for the modification of an Airtec Gulfstream aircraft ("the Aerovation Contract").

Aerovation completed delivery of the materials in April 2018, and Airtec subsequently contracted with Aery to install them. After securing that contract ("the Aery Contract"), Aery subcontracted with Stevens for labor. The installation of the parts was primarily conducted at Stevens's hangar in South Carolina. Aerovation's only contract was with Airtec; it did not have a contract with Stevens or Aery.

Although Airtec made one payment to Aerovation for the aircraft parts, Airtec did not make full payment to Aerovation as required by the Aerovation Contract. Airtec contends that the strongback component and ventral fin delivered by Aerovation did not meet the contract requirements.

**I.  Aery**

Aery, a limited liability company, is headquartered in Newport News, Virginia. It has no offices or employees in Maryland. Aery entered into a contract with Airtec, a Maryland company, in or about early January 2018 to oversee the modification of Airtec's Gulfstream aircraft. Airtec made the initial contact with Aery to discuss the project in November 2017. In turn, Aery submitted at least three formal proposals to Airtec at its offices in California, Maryland, in January, February, and April 2018. Airtec and Aery communicated by telephone, email, and text to discuss the proposed contract. The Aery Contract was executed on January 5, 2018, and pursuant to the contract, four purchase orders totaling more than $2 million were executed between May and October 2018. After the award of the contract, Aery's representatives traveled to Airtec's offices in Maryland six times between January and August 2018. These visits included a meeting within two weeks after the execution of the contract, a meeting to discuss engineering and certification content, a meeting to discuss transportation to the assembly location in Greenville, South Carolina, and separate deliveries of parts, component racks, and a data drive to Airtec.

Aery's proposals to Airtec sought a Virginia forum selection clause and a choice-of-law clause providing that the contract would be governed by Virginia law. Airtec's standard purchase order for the receipt of services from Aery, however, contained a Maryland choice-of-law clause and a clause providing for mandatory mediation to occur in Maryland. The actual purchase orders issued by Airtec and accepted by Aery incorporated Airtec's standard purchase order by reference.

After securing the contract for the Gulfstream project at issue, Aery received another contract from Airtec in February 2018, for work referred to as the "King Air" project.

## II. Stevens

Stevens provided engineering labor and facilities during the installation of the aircraft parts Aerovation provided to Airtec. In its Counterclaim, Airtec states that after Stevens engineers had unsuccessfully attempted to install the parts on the Gulfstream aircraft, Airtec communicated to Aerovation that the parts were not suitable and would require further modification or replacement. According to Aerovation, at Airtec's request, it sent technicians to Stevens's facilities to "provide technical assistance" during the installation. Third-Party Compl. ¶ 15, ECF No. 11. Aerovation contends that if the parts could not be properly installed on the Gulfstream aircraft, this failure was due to the faulty work performed by Aery, Stevens, or both, rather than any defective manufacture by Aerovation. Aerovation further claims that Stevens's engineers lacked the capacity to conduct proper installation. Airtec tendered only partial payment for the materials supplied by Aerovation due to the alleged defects.

## III. Procedural History

On September 25, 2018, Aerovation filed its Complaint against Airtec for breach of contract due to Airtec's failure to pay for the aircraft parts. Airtec counterclaimed on October 17, 2018 for breach of contract, breach of express warranty, and breach of implied warranty, claiming

3

that the materials did not conform to the contract specifications. In response to Airtec's Counterclaim, Aerovation impleaded Aery and Stevens as third-party defendants, asserting claims for common law indemnification and contribution against both companies.

## DISCUSSION

In its Motion, Aery seeks dismissal of the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2) based on a lack of personal jurisdiction. Stevens seeks dismissal of both the indemnification and contribution claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Each Motion will be discussed in turn.

### I. Aery's Motion to Dismiss

#### A. Legal Standard

It is the plaintiff's burden to establish personal jurisdiction. *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993). To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that a defendant is properly subject to this Court's jurisdiction. *Id.* In evaluating the plaintiff's showing, this Court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Id.* The Court may consider evidence outside the pleadings in resolving a Rule 12(b)(2) motion. *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d. 757, 763–64 (D. Md. 2009).

Aery, a Virginia-based limited liability company ("LLC"), asserts that its contacts with Maryland are insufficient to allow this Court to exercise personal jurisdiction over it. A district court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the long-arm statute of the state in which the court sits and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.,*

*Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Aerovation asserts that Aery's business contacts with Maryland are sufficient for the exercise of personal jurisdiction. The Maryland long-arm statute authorizes jurisdiction over a party which "transacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)(1) (West 2011). Because courts have interpreted the Maryland long-arm statute to reach as far as the Constitution allows, the statutory and due process components of the personal jurisdiction analysis merge. *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

The due process analysis requires a showing that Aery has sufficient "minimum contacts" with Maryland such that "maintenance of the suit [in this state] does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts distinguish between two types of personal jurisdiction: general and specific. General jurisdiction offers a path to personal jurisdiction when the party has affiliations with the state that are "so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction provides jurisdiction "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Here, Aerovation alleges that this Court has both general and specific jurisdiction over Aery.

For the proper exercise of general personal jurisdiction over a nonresident corporate defendant, the defendant must engage in "continuous corporate operations within a state so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co.*, 326 U.S. at 318. The "paradigm" of general jurisdiction for a corporate defendant is its domicile, place of incorporation, or principal place of

business, where the company may be "fairly regarded as at home." *Goodyear Dunlop Tires*, 564 U.S. at 924.

In order for a court to exercise specific personal jurisdiction over a defendant, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State," its "conduct and connection with the forum State" must be "such that [it] should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and the cause of action must "result[] from alleged injuries that arise out of or relate to those activities," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). To find specific personal jurisdiction, a court must "consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted).

On the first prong, which focuses on the minimum contacts requirement of the Due Process Clause, the United States Court of Appeals for the Fourth Circuit weighs several additional factors: "whether the defendant maintains offices or agents in the forum state, whether the defendant owns property in the forum state, whether the defendant reached into the forum state to solicit or initiate business, whether the defendant deliberately engaged in significant or long-term business activities in the forum state, whether the parties contractually agreed that the law of the forum state would govern disputes, whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, the nature, quality and extent of the parties' communications about the business being transacted, and whether the performance of contractual duties was to occur within the forum." *Id.* (citations omitted). No single factor is dispositive. *Id.*

### B. General Jurisdiction

This Court does not have general jurisdiction over Aery. Aery is a Virginia-based LLC and maintains no offices, owns no property, and employs no persons in Maryland and thus cannot be deemed to be virtually "at home" in Maryland. *Goodyear Dunlop Tires*, 564 U.S. at 919, 924. Aery's only Maryland customer to date is Airtec, and while Aery has received two contracts from Airtec, these interactions cannot be characterized as sufficiently "continuous" or "substantial" as to render Aery subject to general jurisdiction in Maryland. *Int'l Shoe Co.*, 326 U.S. at 318. To properly exercise personal jurisdiction over Aery, the Court must therefore turn to specific personal jurisdiction.

### C. Specific Jurisdiction

Aerovation has made a *prima facie* showing that Aery is subject to specific jurisdiction in Maryland. Section 6–103(b) of the Maryland long-arm statute grants jurisdiction over corporations which have "[t]ransact[ed] business" in the state, and Aery may fairly be viewed as having done so. Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)(1). Maryland courts have exercised specific personal jurisdiction under section 6–103(b)(1) where an out-of-state defendant had engaged in a single business transaction connected to Maryland. For example, personal jurisdiction was found over a defendant who had initiated contact with and negotiated a contract with a Maryland company, then sent a check to Maryland as a down payment, even though the deal was not finalized. *Jason Pharm. v. Jiana Bros. Packaging Co.*, 617 A.2d 1125, 1129–30 (Md. Ct. Spec. App. 1993). Personal jurisdiction also existed over a defendant who had his agents negotiate with the plaintiff in Maryland over payment on a single out-of-state promissory note. *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977); *see also Novack v. Nat'l Hot Rod Ass'n*, 231 A.2d 22, 26 (Md. 1967) (finding personal jurisdiction where the defendant on one occasion

surveyed a race track in Maryland and certified it as safe for drag racing); *Harris v. Arlen Props., Inc.*, 260 A.2d 22, 26–28 (Md. 1969) (finding personal jurisdiction where the defendant had surveyed a Maryland property for purchase multiple times and filed for building permits for that property). By submitting multiple contract proposals to Airtec, a Maryland company, executing a multimillion dollar contract with Airtec, and visiting Maryland six different times as part of the execution of that contract, Aery has conducted business in the state of Maryland to an equal or greater degree than the defendants in the cases outlined above and thus transacted business within the meaning of the Maryland long-arm statute.

In transacting such business, Aerovation engaged in sufficient minimum contacts between Aery and Maryland such that the Court may exercise personal jurisdiction over Aery. Although Airtec originally solicited Aery's services and the bulk of the work on the aircraft was performed in Virginia and South Carolina, Aery specifically sent three major proposals to Airtec's offices in California, Maryland, then entered into a contract that resulted in interactions over eight months that included three visits by Aery personnel to Maryland to discuss the execution of the contract with Airtec and three specific in-person deliveries of parts and equipment by Aery personnel to Airtec's facility in Maryland. All of these trips related to the Gulfstream project at issue here; one additional visit related to the subsequent "King Air" project.

Moreover, these contacts with Maryland related to more than $2 million in purchase orders for Aery on the Gulfstream project alone. In accepting and signing the purchase orders, Aery consented to mediation in the state of Maryland and agreed that any disputes regarding the purchase orders would be governed by Maryland law. Thus, Aery has received "the privilege of conducting activities within the forum State," *World-Wide Volkswagen*, 444 U.S. at 297, through its multimillion dollar contract with Airtec, and both the contract and contacts are substantial

enough that it does not offend "traditional notions of fair play and substantial justice" to subject Aery to specific personal jurisdiction in Maryland, *Int'l Shoe Co.*, 326 U.S. at 316.

Because this Court may exercise only specific personal jurisdiction over Aery, the litigation at issue must stem from injuries that "arise out of or relate to" Aery's Maryland contacts. *Burger King Corp.*, 471 U.S. at 472–73. Aerovation is suing Aery regarding Aery's work on the aircraft materials Aerovation delivered to Airtec. While there was no express contractual relationship between Aerovation and Aery, Aery's work on the materials supplied by Aerovation was facilitated by, and would not have occurred in the absence of, Aery's Maryland contacts, specifically its contract with Airtec. Indeed, Aerovation's claims against Aery are that Aery's work on its contract with Airtec, in installing Aerovation's parts on an Airtec aircraft, was substandard and caused harm to Airtec that has caused Airtec to breach its contract with Aerovation. Thus, Aerovation's claims arise out of and relate to Aery's Maryland contacts. *Cf. CEM Corp. v. Personal Chemistry, AB*, 55 F. App'x 621, 624–25 (4th Cir. 2003) (holding that a North Carolina court could not assert personal jurisdiction over a Swedish company where the company's North Carolina activities, including sales to unrelated North Carolina companies, largely had "nothing to do with the dispute" regarding whether the Swedish company breached an agreement-in-principle to settle patent infringement claims). The fact that Aery's work on the Gulfstream aircraft occurred in South Carolina and Virginia, not Maryland, does not alter this conclusion. *See Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1046–47 (4th Cir. 1988) (holding that where a nonresident defendant company was solicited by a Virginia company and later sold an air compressor to the Virginia company, the exercise of personal jurisdiction in Virginia was proper even though the goods were delivered, installed, and

malfunctioned in Mexico). Because Aerovation's claims relate to Aery's Maryland contacts, the exercise of specific personal jurisdiction is proper.

Aery's reliance on the presence of a Virginia forum selection clause in the executed proposals to argue that it is impermissible for the Court to exercise personal jurisdiction is unpersuasive. Although Aery's proposals submitted to and accepted by Airtec each contained a Virginia forum selection clause and a Virginia choice-of-law clause, Airtec's purchase orders, which Aery accepted and signed, referred to Airtec's Standard Purchase Order Terms and Conditions, which contain a clause stating that any dispute arising out of the purchase order would be mediated in Maryland under Maryland law. A valid choice-of-law clause is not a dispositive factor but may be considered when deciding whether the exercise of personal jurisdiction is appropriate. *Consulting Eng'rs*, 561 F.3d at 281. In contrast, "a valid forum selection clause, unlike a choice of law clause, may act as a waiver to objections to personal jurisdiction." *Id.* at 281 n.11. Consenting to a forum, even for arbitration, "confers personal jurisdiction upon the courts of the chosen forum." *CoStar Realty Info.*, 604 F. Supp. 2d at 764; *see Ins. Corp. of Ireland Ltd. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982). Thus, the Virginia forum selection clause may preclude either Airtec or Aery from claiming a lack of personal jurisdiction in Virginia, but the Maryland forum selection clause in the purchase orders may also preclude Airtec or Aery from challenging personal jurisdiction in Maryland.

Regardless, even if the Virginia forum selection clause, which does not bind Aerovation, would require a dispute between Airtec and Aery arising from their contract to be adjudicated in a Virginia court, it does not control the question whether there is personal jurisdiction over Aery in Maryland. It is possible to be amenable to suit in two different forums, as Aery is here. For the reasons stated above, this Court may exercise specific personal jurisdiction over Aery in this case,

even though Aery could also be sued in Virginia. Aery's Motion to Dismiss for lack of personal jurisdiction will therefore be denied.

## II. Stevens's Motion to Dismiss

Aerovation has sued Stevens for tort indemnity and contribution for work performed on the mounting assembly and ventral fin for the Gulfstream aircraft, alleging that the parts were rendered unusable by Stevens's and Aery's faulty work rather than by Aerovation's defective manufacture or delivery. Stevens argues that since it had no relationship with Aerovation, it cannot be liable under an indemnification theory or a contribution theory for Airtec's alleged injuries inflicted by Aerovation.

### A. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Although courts generally may consider only the allegations in the pleadings in resolving a motion to dismiss under Rule 12(b)(6), courts are permitted to consider a document attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea*

*Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

Aerovation asks that the Court consider contract documents between Airtec and Aery in which Aery indemnifies Airtec, as well as emails between employees of Aerovation and Airtec. Although neither party disputes the authenticity of the documents, they are not integral to Aerovation's Third-Party Complaint. Neither Aerovation nor Stevens is a party to the Airtec Contract, and the emails, which contain correspondence between Airtec and Aerovation regarding the fittings for the aircraft, are not relied upon in the Third-Party Complaint. Furthermore, even if the Court could consider the documents, they would not change the Court's legal conclusion, as they do not suggest any relationship between Aerovation and Stevens. The Court will not consider the documents submitted by Aerovation in deciding Stevens's Motion to Dismiss.

### B. Indemnification

In Maryland, there are three types of indemnity: (1) express contractual indemnity; (2) implied-in-fact indemnity, where there is a special relationship between the parties; and (3) tort indemnity, which arises where equitable considerations require indemnification. *Pulte Home Corp. v. Parex*, 942 A.2d 722, 730–31 (Md. 2008). Where there is no explicit indemnity agreement and Aerovation refers to only tort indemnity in its briefing, the Court will construe Aerovation's claim as seeking this type of indemnity. Tort indemnity arises in situations where one party "has become subject to tort liability for the unauthorized and wrongful conduct of another." *Id.* at 731 (quoting Restatement of Restitution § 96 (Am. Law Inst. 1937)); *see Parler & Wobber v. Miles & Stockbridge*, 756 A.2d 526, 532 (Md. 2000).

The circumstances under which indemnification can be implied are limited. The party against which indemnification is sought must be liable to the injured party in tort, *Heritage*

*Harbour, LLC v. John J. Reynolds, Inc.*, 795 A.2d 806, 810 (Md. Ct. Spec. App. 2002), and a tort-based indemnification right will be found only where "there is a great disparity in the fault of the two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other." *Hanscome v. Perry*, 542 A.2d 421, 426 (Md. Ct. Spec. App. 1988) (quoting *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986)). Active negligence by the party seeking indemnification destroys the right. *Franklin v. Morrison*, 711 A.2d 177, 187 (Md. 1998); *Pyramid Condo. Ass'n v. Morgan*, 606 F. Supp. 592, 596 (D. Md. 1985). Whether a third-party plaintiff's negligence is active is determined from the allegations contained in the complaint against it. *Pyramid*, 606 F. Supp. at 596. Where "it is clear from circumstances revealed in the complaint that liability would only arise from proof of active [wrongdoing], there is no basis for an indemnity claim." *Bd. of Tr. of Baltimore Cty. Cmty. Colls. v. RKTL Assoc., Inc.*, 559 A.2d 805, 811 (Md. Ct. Spec. App. 1989) (citations omitted).

Aerovation seeks tort indemnity from Stevens for any potential liability to Airtec. To determine whether Aerovation may seek tort indemnity from Stevens, the Court looks to Airtec's counterclaim against Aerovation. *See Heritage Harbour*, 795 A.2d at 810–11; *see also Pyramid*, 606 F. Supp. at 596. Airtec's counterclaim asserts claims for breach of contract, breach of express warranty, and breach of implied warranty. Airtec's claims against Aerovation thus contain no allegations of negligence or other tortious conduct. Each of Airtec's actions sound in contract, and Stevens was not a party to the contract between Aerovation and Airtec. Stevens's only known contractual relationship is with Aery, the contractor hired by Airtec to supervise installation of the aircraft parts. Therefore, Aerovation cannot be liable in tort to Airtec and cannot assert a right to tort indemnity.

Even if the indemnification claim could be read as asserting a claim of implied-in-fact indemnification, Aerovation has failed to state a plausible claim. Although a right to indemnification could be implied from a special relationship such as a contractual relationship, there must be "unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility . . . or where there is a generally recognized special relationship between the parties." *Pulte*, 942 A.2d at 730. Here, Aerovation and Stevens had no contractual relationship and, indeed, no relationship at all, let alone a special one. Stevens had a subcontract from Aery, who in turn had a contract from Airtec to install the aircraft parts. Aerovation had a separate contract with Airtec to manufacture and deliver the aircraft materials. Where there was no relationship between Aerovation and Stevens, there is no basis to support a claim of implied-in-fact indemnity against Stevens. The Court will grant Stevens's Motion as to the indemnification claim.

### C. Contribution

Aerovation also asserts a contribution claim against Stevens. Maryland has enacted a version of the Uniform Contribution Among Tort-Feasors Act ("UCATA"). Md. Code Ann. Cts. & Jud. Proc. § 3–1401. To be eligible for UCATA contribution, both parties must be joint tortfeasors and they must be jointly and severally liable in tort for the same injury. *Id.*; *Montgomery County v. Valk Mfg. Co.*, 562 A.2d 1246, 1249 (Md. 1989). Common tort liability exists when "two or more actors are liable in tort to an injured party for the same damages, even if their liability may rest on different grounds." *Parler & Wobber*, 756 A.2d at 534 (citations omitted). As discussed above, where there is no tort claim asserted by Airtec against Aerovation or Stevens, UCATA contribution does not apply.

Contribution is also available in cases where there is a joint contractual obligation or other debt not arising out of tort liability. *Hartford Accident & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 674 A.2d 106, 137 (Md. Ct. Spec. App. 1996), *aff'd* 695 A.2d 153 (Md. 1997). Such a contribution claims requires a "common liability," such as joint liability "on the same obligation[,] such as a contract, promissory note, or tax." *Id.* Furthermore, "the party seeking contribution must have paid, under legal compulsion, more than his fair share of the common obligation." *Id.* This type of contribution is frequently applied where both parties share a joint contractual obligation, *id.*, or are "equally obligated for discharging their mutual" debt obligation, *Lyon v. Campbell*, 596 A.2d 1012, 1013 (Md. 1991); *Jackson v. Cupples*, 212 A.2d 273, 274 (Md. 1965).

In this case, however, there is no common contractual liability or other mutual obligation between Aerovation and Stevens. *See Scarlett Harbor*, 674 A.2d at 137. Airtec has specifically alleged in its counterclaim that Aerovation is liable to it under the contract between Airtec and Aerovation to provide aircraft parts, to which Stevens was a not a party. In turn, Stevens's only contract is with Aery. Thus, Aerovation and Stevens owe different contractual obligations to different parties. Where there is no contract or mutual obligation on which Aerovation and Stevens are jointly liable, Aerovation's contribution claims are not viable. *See id.* The Motion will be granted as to the contribution claim against Stevens.

### D.     Motion to Amend

In a Surreply, Aerovation requests that it be permitted to amend its Third-Party Complaint to support its indemnification and contribution claims against Stevens by including the documents attached to the Surreply, namely the Aery Contract, in which Aery indemnifies Airtec, and certain emails between employees of Aerovation and Airtec.

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave" to amend "when justice so requires." "A motion to amend should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)). Amendment is futile if the complaint, as amended, fails to state a claim upon which relief could be granted. *See id.* at 277 (finding that the plaintiff's amended complaint was futile because although it stated a new legal theory, it failed to articulate a cognizable claim upon which relief could be granted).

For the reasons stated above, the Court finds that these documents would not change its conclusions in dismissing the indemnification and contribution claims, because they do not establish a basis to claim that Aerovation and Stevens were joint tortfeasors, as necessary to establish tort indemnity or UCATA contribution. *See Hanscome*, 542 A.2d at 426; *Valk Mfg. Co.*, 562 A.2d at 1249. They also do not provide additional facts that could be construed as establishing either a contractual or other special relationship between Aerovation and Stevens that would support implied-in-fact indemnification, *see Pulte*, 942 A.2d at 730, or joint liability on the same non-tort obligation shared by Aerovation and Stevens that would support a contribution claim, *Scarlett Harbor*, 674 A.2d at 137. Therefore, Aerovation will not be granted leave to amend on these grounds.

Aerovation further suggests that it may wish to amend its Third-Party Complaint to allege a tort claim against Stevens, under the theory that because Airtec never made payment on the aircraft parts delivered by Aerovation, the aircraft parts and materials were still Aerovation's property, such that any negligence by Stevens in installing those materials constitutes a tort against

Aerovation. Aerovation has not submitted any authority, and the Court has identified none, establishing that goods delivered under an allegedly breached contract still belong to the seller, such that any harm to those goods qualifies as a tort. Nor has it identified the source of any duty of care that Stevens owed to Aerovation. *See Armacost v. Davis*, 200 A.3d 859, 872 (Md. 2019). While Aerovation may seek to bring additional claims against Stevens based on facts uncovered during discovery, it has not asserted a viable basis for a claim at this point. The Court therefore will not grant leave to amend the Third-Party Complaint.

## CONCLUSION

For the foregoing reasons, Aery's Motion to Dismiss will be DENIED. Stevens's Motion to Dismiss will be GRANTED. Aerovation's request for leave to amend the Third-Party Complaint as to Stevens will be DENIED. A separate Order shall issue.

Date: August 16, 2019

THEODORE D. CHUANG
United States District Judge